TRADERS & GENERAL INS. CO.

v.

GENTRY.

No. 15492.

Court of Civil Appeals of Texas.

Fort Worth.

March 19, 1954.

Rehearing Denied April 23, 1954.

Jones, Parish & Fillmore, and Harold Jones, Wichita Falls, for appellant.

Peery, Wilson & Spell, and Kearby Peery, Wichita Falls, for appellee.

BOYD, Justice.

This suit was filed by appellee J. C. Gentry against appellant Traders & General Insurance Company to set aside an award of the Industrial Accident Board and to recover a lump sum payment for total and permanent disability alleged to have resulted from an electrical shock suffered by him on July 16, 1952. The jury found that appellee sustained total and permanent disability and that his compensation should be paid in a lump sum. Judgment was rendered accordingly and appeal was perfected.

By its first and second points of error appellant says that the court erred in admitting the testimony of Dr. Parnell that appellee suffered injury and damage to his brain, and that the court erred in overruling its motion for a mistrial after such testimony, because appellee's pleadings did not authorize the admission of such testimony, and appellant was not put upon notice that appellee claimed any such injury, and was thereby denied an opportunity to refute such evidence. Appellee counters that his pleadings were sufficient to authorize such testimony; and that appellee did not introduce any such evidence from the witness, and when he offered to do so the court sustained appellant's objection and that the only testimony on that point by the witness was elicited by appellant. Appellee's allegations as to injuries are as follows: "The plaintiff was attempting to raise a cattle guard with the use of a winch line on a truck, when the driver of the truck backed the same into a highline which, at the time, was charged with approximately 7500 volts of electricity, with the result that the plaintiff was knocked unconscious and fell, striking his head, and the electric shock, coupled with the fall, burned his entire body causing a paralysing shock throughout his entire body, paralysing the plaintiff's right hand and burning both of his feet and causing the plaintiff to suffer a highly nervous condition, as well as internal injuries

and headaches, which has rendered the plaintiff totally unfit to do the work of an ordinary laboring man, which condition has been and will be permanent, and hence, the plaintiff has been totally and permanently disabled within the meaning of the Workmen's Compensation Act [Vernon's Ann.Civ.St. art. 8306 et seq.]."

Appellee asked the physician whether it was reasonably probable that appellee had some brain injury and injury to the brain tissues as a result of the electrical shock. Appellant objected that there were no pleadings authorizing the reception of such evidence and the objection was sustained. Then appellee propounded this question: "Doctor Parnell, state what in your opinion is this man's condition with reference to his nervous system which was caused by this electrical shock which he received out there." The witness answered: "I think his nervous system is wrecked, and I think he has brain damage, definitely." Appellant moved for a mistrial, which was denied, and then asked the court to instruct the jury not to consider the statement made by the witness. The court instructed the jury not to consider the answer of the witness with reference to damage to appellee's brain. Appellee then proved by the witness, without objection, that the brain is a part of the nervous system. The witness testified that appellee was totally and permanently disabled.

Under questioning by appellant, the witness testified that the electrical shock had impaired appellee's nervous system, and that condition, together with burns on his hand and feet, caused him to be unable to do ordinary labor.

Appellant asked the witness the following questions and he made the following answers:

"Q. Doctor Parnell, do you base your testimony with reference to the disability of this man on an impairment of his entire nervous system? A. Yes.

"Q. It is based in part on an impairment of his entire nervous system? A. Yes, that's right.

"Q. And when you say entire nervous system do you include in that impairment and damage to the brain? A. He has got some damage to the brain all right.

"Q. You didn't understand my question. A. Yes, I did, and I answered it.

"Q. In making that do you include in it damage and impairment of the brain? A. Yes, sir, he has some impairment of the brain.

"Q. You have answered that three times. My question was do you include in that, in forming your opinion, impairment and damage to the brain? A. Yes, certainly. The brain is part of the nervous system.

"Q. That was my question. * * *
* * * * * *
"Q. How about his headaches; what causes that? A. That is due to his damage—I think that is due to a brain damage. I think he has a damage of brain tissue."

In our view of this matter, we believe it is unnecessary to determine whether appellee's pleadings authorized the admission of testimony relating to brain impairment or damage. As we construe this record, appellee's effort to prove such injury was effectually blocked by appellant's objections and the rulings of the court. What evidence there is in the record touching any brain impairment or damage was either elicited by appellant or voluntarily supplied by the witness.

We believe we understand appellant's contention that it was not proving brain impairment or damage but it was only undertaking to show that appellee's expert witness, in forming his estimate of appellee's disability, took into consideration impairment and damage to appellee's brain, and that he was not authorized to do so; but we are unable to agree with appellant that evidence of brain impairment and damage was not in the record in such way as to be properly considered by the physician in estimating appellee's disability. If the witness' testimony on that point under ap-

pellant's interrogation was unresponsive and voluntary, it was nevertheless in the record, with no effort being made to withdraw it from the consideration of the jury until after both sides had closed.

After all the evidence had been introduced and before the charge had been prepared, appellant moved to strike the testimony of Dr. Parnell as to appellee's brain damage and as to injury to his nervous system, and his testimony bearing upon the issue of total and permanent disability; and in the alternative for a mistrial or postponement of the case so as to enable it to procure medical testimony on the issue of appellee's brain impairment. These motions were all overruled.

 Considering the manner in which the testimony complained of got into the record after the court instructed the jury not to consider the statement made when the witness was being interrogated by appellee, we feel that we are not warranted in holding that the court's refusal to grant the motions to strike the testimony of the physician as to brain impairment and injury to the nervous system, and to grant a mistrial or postponement, was such an abuse of discretion as to require a reversal of the case, if indeed it was any abuse of discretion at all. 41–B Tex.Jur., p. 160, sec. 134 and p. 191, sec. 160, and cases there cited.

Appellant's motion for a mistrial was not based upon the contention that any of the physician's statements were so inflammatory or prejudicial that their harmful effect could not be erased from the minds of the jurors by instructions from the court; but it was predicated upon the ground that appellee's pleadings did not authorize such evidence, and appellant had not been put on notice that brain injury was claimed, and was denied an opportunity to refute or combat such evidence. And if we are correct in our conclusion .that appellee is not responsible for that evidence being in the record as we now find it, this point is disposed of by what we have already said.

In its brief appellant groups points three to fifteen, and we shall consider them together. They attack the finding of the jury and the judgment of the court that appellee sustained total and permanent disability, and appellant insists that there is no evidence, or the evidence is insufficient, to support the finding and judgment without placing presumption upon presumption and first presuming that the electrical shock reached appellee's brain and presuming that the brain was thereby damaged; and that Dr. Parnell's testimony as to brain damage was merely speculation predicated either upon hearsay or supposition and imagination, there being no testimony from the doctor that any examination of the brain had been made, and no evidence that appellee's brain had been damaged or that the electrical shock had penetrated, affected, or damaged appellee's brain or was calculated to produce such result. Appellant's further contention is that Dr. Parnell unequivocally testified that he based his testimony pertaining to injury to appellee's nervous system upon an assumption that appellee had suffered brain damage, and that such assumption has no basis in fact. The same complaint is made as to the finding of the jury as to a lump sum payment, since lump sum payment is not authorized except in cases of total and permanent disability, which appellant contends the evidence was insufficient to establish.

It was shown that the wire with which appellee came into contact carried 7200 volts of electricity. Dr. Parnell testified that he examined appellee on February 3, 18, 19, 24, and 27, 1953; on March 4, 11, and 21, 1953; on April 1, 1953; on the day of the trial, and probably two or three other times; that 7200 volts of electricity passing through a man's body can cause injury, and an injury of that type will cover the entire body; that it can induce paralysis or limitation of motion; that no part of the body will escape some injury, especially the nervous system; that he thought appellee's nervous system was "wrecked," and was "shocked to pieces;" that the brain is part of the nervous system, and "is the origina-

tor of it;" that appellee's nervous condition is attributable to injury to his nervous system generally; that the electrical shock "came near to killing him."

In both brief and oral argument appellant has ably presented its contentions, and we have given them most earnest consideration, but we do not think the physician's testimony is subject to the construction appellant places upon it, nor that the findings of the jury and the judgment of the court are vulnerable to appellant's attack. We presume that the witness' testimony amounted to his professional opinion, based upon his knowledge of the history of the case and his many examinations of appellee. We cannot say that his opinion that appellee suffered brain impairment and injury was arrived at by placing presumption upon presumption, first presuming that the electrical shock reached appellant's brain and then presuming that the brain was thereby damaged. This court does not profess to know how or why electricity injures a person's brain, or to understand the significance of the factors that are considered in finding the existence or determining the extent of any such injury. That must be left to people who know more about it than we do. We cannot supervise the thinking of expert witnesses in their special field to such an extent as to appraise symptoms which to us may be meaningless but which to them may have fixed and certain meanings. In this case the jurors were the exclusive judges of the facts proved, wherever there was sufficient legal evidence to support their findings.

 We cannot find in the record where the witness, "unequivocally" or otherwise, testified that his opinion as to injury to appellee's nervous system was based upon an assumption that appellee had suffered brain damage. He testified without qualification that appellee suffered damage to his nervous system, and we are not in a position to say that if such opinion was based upon any assumption it was upon an assumption that the witness had no right to consider.

The contention is not made that the evidence would be insufficient to sustain the finding of total and permanent disability if the evidence as to brain impairment and damage is properly to be considered.

Believing that reversible error is not shown, the judgment is affirmed.